## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CRAIG KULIGOWSKI, | |
|      *Plaintiff,* | |
| v. | Case No.: |
| THE UNIVERSITY OF TOLEDO, | **JURY TRIAL DEMANDED** |
| And | |
| BETHANY ZIVISKY, *In her individual and official capacities*, | |
|      *Defendants.* | |

## COMPLAINT

The University of Toledo's Athletic Department fired Craig Kuligowski because he was the wrong age and the wrong race. It did not matter that he was an alumnus and a former student athlete. According to the University, he was somehow not "representative" of the student athletes – *i.e.* he was not young and he was not black. After making this statement, the University swiftly terminated him without a hearing. The University then replaced him with a younger, black employee. Discrimination on the basis of age and race is always wrong. Mr. Kuligowski files this Complaint to vindicate his civil rights and hold Defendants to account.

## Parties

1.      Craig Kuligowski ("Mr. Kuligowski") is an individual who is a resident of and citizen of the State of Ohio. Mr. Kuligowski is a white male over the age of 40.

2.      The University of Toledo ("University") is a public university incorporated, and with its principal place of business located, in the State of Ohio. It has 15 or more employees and receives federal funding.

3.      Bethany Zivisky is the Executive Director of the Labor, Employee Relations, and Compliance Department at the University. At all relevant times, she was the Interim Senior Associate Vice President of Human Resources and Chief Human Resources Officer.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

5.      This Court has personal jurisdiction over Defendants because both Defendants are citizens of the state of Ohio.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this judicial district.

## Factual Background

7.      On August 14, 2020, the United States Department of Education promulgated regulations interpreting Title IX.

8.      One of these regulations, 34 C.F.R. § 106.44(a), requires universities receiving federal funding to use a process compliant with 34 C.F.R. § 106.45, including a live hearing and cross-examination, to adjudicate any formal complaint of sexual harassment or retaliation.

9.      The term "formal complaint" is defined by 34 C.F.R. § 106.30 as, in relevant part, "a document filed by a complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the recipient investigate the allegation of sexual harassment."

10.      The regulations require that a "formal complaint" be filed, and the grievance process at 34 C.F.R. § 106.45 be completed, before "the imposition of any disciplinary sanctions or other actions that are not supportive measures." 34 C.F.R. § 106.44(a).

11.      The regulations further extend these requirements to complaints alleging retaliation. 34 C.F.R. § 106.71(a).

12.      Similarly, in the University's Title IX policy, the University extends the procedural requirements of 34 C.F.R. § 106.45 to its investigation of retaliation complaints.

13.      As the Chief Human Resources official at the University, Defendant Zivisky was trained on the above procedural requirements.

14.      After being a student-athlete football player at the University, Mr. Kuligowski began a decades-long, fulfilling and illustrious career as a football coach.

15.    Mr. Kuligowski has a stellar coaching record. He has been a part of coaching staffs of championship teams in the Mid-American Conference, the Big-12, and the Southeastern Conference.

16.    Prior to rejoining the staff at the University in 2020, Mr. Kuligowski coached at the University of Missouri, the University of Miami, and the University of Alabama, where he coached six first-round NFL draft picks and three unanimous All-Americans.

17.    Ultimately, he became a coach at his alma mater, the University.

18.    Before he was wrongfully terminated by the University, Mr. Kuligowski was the Defensive Line Coach, Co-Defensive coordinator, and assistant Head Football Coach at the University.

19.    The University hired Mr. Kuligowski because it knew that he was, to put it mildly, well-qualified at coaching college football.

20.    When the University hired Mr. Kuligowski, the two Parties entered into an employment contract. Exhibit A.

21.    Tellingly, Section 5.3 of that employment contract purports to require Mr. Kuligowski to waive any future civil rights or discrimination claims against the University.

22.    The contract also provided, among other things, that if the University terminates for cause, it must provide Mr. Kuligowski notice of its intention to terminate the agreement and the intended date of the termination.

23.     The contract provides, in relevant part, that the University may terminate for cause only for "significant violation of University rules."

24.     The University is incentivized to terminate for cause because if it terminates without cause, it owes Mr. Kuligowski a year's salary in liquidated damages.

25.     In late Summer 2022, after approximately two years of employing Mr. Kuligowski, the University conducted a department-wide staff meeting in which the new Athletic Director, Bryan Blair, introduced his new Assistant Athletic Director, Al Tomlison, who is under the age of 40 and black and replaced an older, white male.

26.     By way of context, the new Athletic Director, Blair, is a younger, black male who replaced an older, white male.

27.     The previous Athletic Director was not renewed by the new President of the Board of Trustees, Al Baker Sr., who is black and who himself replaced an older, white male.

28.     Charles E. Jake is the General Counsel is also a black male and also replaced an older white male.

29.     During the department-wide meeting, Blair, as an agent of the University, announced it was the intention of the University's Athletic Department to hire more coaches who were "representative" of the current student-athletes.

30.     It was clear that by "representative," Blair, as an agent of the University, meant younger and black or African American.

31. Mr. Kuligowski grew fearful as soon as the University made this announcement. Mr. Kuligowski is an older, white coach who coaches and recruits mostly non-white players.

32. Mr. Kuligowski's fears proved to be well founded. Soon thereafter, he experienced discrimination on the basis of race and age, ultimately leading to his abrupt firing and replacement with a younger, black coach.

33. Despite Mr. Kuligowski's status as a former student athlete – *i.e.* representative of the students in the way it should matter – in the Fall of 2022, the University decided Mr. Kuligowski was not "representative" of the student athletes in the way it wanted because he was white and he was older.

34. The University seized on an opportunity when a false and frivilous report of sexual harassment was filed against Mr. Kuligowski – the complaining employee reported that she was offended by Mr. Kuligowski's supposed comment that she had on her "fancy pants."

35. Mr. Kuligowski never made this statement and the University's own investigation did not corroborate the complaint.

36. Of course, even if he had made this statement, the comment is so benign and harmless that no one could possibly believe that the statement constituted sexual harassment.

37. Indeed, under the University's policy and the Title IX Regulations, which define "sexual harassment" as "[u]nwelcome conduct [on the basis of sex] determined by a reasonable person to be so severe, pervasive, and objectively

offensive that it effectively denies a person equal access to the recipient's education program or activity," her false allegation would never give rise to such a finding.

38.     When the complainant filed her report, she indicated she did not want a formal complaint filed and did not want the University to undertake an investigation.

39.     Despite this, the University opened an investigation anyway, on or about October 3, 2022.

40.     Eventually, the investigation could not find evidence that Mr. Kuligowski made the alleged statement, but the process of a formal investigation was onerous on Mr. Kuligowski as it would be on anyone.

41.     On or about December 16, 2022, the complainant approached Mr. Kuligowski, sat down next to him, and started a conversation with him.

42.     Feeling uncomfortable, Mr. Kuligowski joked with the complainant that "if my wife knew you were near me, she'd kill you." Obviously, this was not an actual threat, but a joke born of an uncomfortable situation.

43.     Nevertheless, the complainant decided to escalate the situation after baiting Mr. Kuligowski into talking to her – she filed a formal complaint on December 17, 2022, against Mr. Kuligowski for retaliating against her, and she requested his firing.

44.     At all relevant times, the University defined retaliation in its Title IX policy as "disciplinary or adverse action taken against an individual because she or

he has made a protected disclosure or has participated in an investigation, proceeding, or hearing involving a protected disclosure."

45. Under any reasonably interpretation, a joke does not constitute "disciplinary or adverse action" because a joke is not "action," let alone anything disciplinary.

46. On December 17, 2022, the University abruptly suspended Mr. Kuligowski and sent him home from the University's upcoming postseason football game in Boca Raton, Florida.

47. The University did not give Mr. Kuligowski a reason for the suspension, nor did he have an opportunity to respond.

48. On December 19, 2022, two days later, the University's Human Resources Department ("HR") interviewed Mr. Kuligowski.

49. After this interview, the two advocacy council members who were present at this HR interview said, "this is nothing, you're definitely not getting fired or anything."

50. Three days later, on December 22, 2022, HR found Mr. Kuligowski responsible for retaliation without a hearing.

51. A few days after that, on December 28, 2022, the University's Athletic Director (the same employee who announced that the University needed to hire more "representative" staff) contacted Mr. Kuligowski by phone to tell him that he would probably be fired or severely suspended in clear contrast to what the advocacy council members had said.

8

52.     Accordingly, on January 14, 2023, the University, through Defendant Zivisky, abruptly terminated Mr. Kuligowski for cause after a rapid and unfair "investigation" into alleged retaliation, stating in its termination letter that Mr. Kuligowski had committed a "serious violation of University Rules."

53.     Defendant Zivisky signed the letter terminating Mr. Kuligowski. Defendant Zivisky was, at all relevant times, the Interim Senior Associate Vice President and Chief Human Resources Officer.

54.     Defendant Zivisky oversaw all terminations and hiring at the University and effectuated the University's practice of replacing older, white employees with younger, black employees.

55.     Notably, the University took less than a week from receiving the retaliation complaint to investigate it and find Mr. Kuligowski responsible for retaliation.

56.     The University did not conduct a hearing, in violation of its own policies and in violation of the Title IX regulations. The University was required by both authorities to use the formal grievance process outlined at 34 C.F.R. § 106.45 to investigate and resolve the retaliation complaint, which includes, among other things, a live hearing with cross examination. The University skipped all of that and summarily terminated Mr. Kuligowski.

57.     Within a few months, the University replaced Mr. Kuligowski with a younger, black employee.

58.     During this time, the University transmitted the wrongful finding to the TOLEDO BLADE, a local newspaper. *See* Exhibit B (describing having spoken to "three people familiar with the matter" and also having reviewed Mr. Kuligowski's personnel file, which could have only come from sources within the University).

59.     Mr. Kuligowski's termination was pretext for the University getting rid of him to replace him with a younger, black coach.

60.     This is evidenced by University's Athletic Department's increasing focus on race beginning in the summer of 2022 and continuing to the present.

61.     The call to hire more "representative" staff was a transparent call to hire and fire employees while using race as the determining factor.

62.     This is clear from the fact that Mr. Kuligowski is a former football player at the University, and based on this history, he was, in fact, representative of any current or former University football player.

63.     Accordingly, what the University meant by "representative" was simply skin color and age, and not any bona fide connection to the University or the players.

64.     The University knew that it wanted to replace Mr. Kuligowski with a younger, black employee; it just needed pretext to do so.

65.     The retaliation complaint, despite its defectiveness, gave the University the pretext it needed to replace Mr. Kuligowski with a younger employee of the "correct" skin color.

66.     Mr. Kuligowski has exhausted his remedies by filing a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 21, 2023.

67.     At some point during the investigation, the EEOC transferred the case to the United States Department of Justice.

68.     On January 16, 2024, the Department of Justice issued Mr. Kuligowski a Notice of Right to Sue letter.

**CAUSES OF ACTION**

**COUNT I**
**Race Discrimination in Violation of Title VII**
**(against Defendant University)**

69.     Mr. Kuligowski incorporates all prior allegations as if fully stated herein.

70.     Mr. Kuligowski was an employee at the University, entitling him to rights under Title VII.

71.     The University is required to abide by Title VII's prohibition on race discrimination.

72.     The University discriminated against Mr. Kuligowski on the basis of race by terminating him for cause in violation of its policies and then replacing him with a black employee.

73.     The University demonstrated its intent to fire and replace Mr. Kuligowski by an employee of its preferred race by, among other things: (1) declaring that it wanted to hire more "representative" staff, implying that Mr. Kuligowski was not "representative" as an alumnus and former student athlete at the University; (2) following up on its promise of hiring more "representative" employees by hiring black replacements for jobs previously held by white employees; (3) replacing Mr.

11

Kuligowski with a black employee; and (4) willfully violating the University's own policies and federal law by failing to provide Mr. Kuligowski a hearing and by determining that his joke constituted "retaliation" when it clearly did not meet the definition of retaliation.

74.     Mr. Kuligowski is protected by Title VII from discrimination on the basis of his race.

75.     Mr. Kuligowski was qualified for his position at the University.

76.      Mr. Kuligowski suffered adverse employment actions, including but not limited to his firing.

77.     He was replaced by an employee of another race.

78.     There is no legitimate nondiscriminatory reason for the University's behavior.

79.     Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

80.     Mr. Kuligowski has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against him.

<u>COUNT II</u>
**Race Discrimination in Violation of Title VI**
**(against Defendant University)**

81.     Mr. Kuligowski incorporates all prior allegations as if fully stated herein.

82.    Mr. Kuligowski was an employee at the University, which receives federal funding, entitling him to rights under Title VI.

83.    The University is required to abide by Title VI's prohibition on race discrimination.

84.    The University discriminated against Mr. Kuligowski on the basis of race by terminating him for cause in violation of its policies and then replacing him with a black employee.

85.    The University demonstrated its intent to fire and replace Mr. Kuligowski by an employee of its preferred race by, among other things: (1) declaring that it wanted to hire more "representative" staff, implying that Mr. Kuligowski was not "representative" as an alumnus and former student athlete at the University; (2) following up on its promise of hiring more "representative" employees by hiring black replacements for jobs previously held by white employees; (3) replacing Mr. Kuligowski with a black employee; and (4) willfully violating the University's own policies and federal law by failing to provide Mr. Kuligowski a hearing and by determining that his joke constituted "retaliation" when it clearly did not meet the definition of retaliation.

86.    Mr. Kuligowski is protected by Title VI from discrimination on the basis of his race.

87.    Mr. Kuligowski was qualified for his position at the University.

88.     Mr. Kuligowski suffered adverse employment actions, including but not limited to his firing.

89.     He was replaced by an employee of another race.

90.     There is no legitimate nondiscriminatory reason for the University's behavior.

91.     Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

92.     Mr. Kuligowski has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against him.

### COUNT III
### Age Discrimination in Violation of the ADEA
### (against Defendant University)

93.     Mr. Kuligowski incorporates all prior allegations as if fully stated herein.

94.     Mr. Kuligowski was an employee over 40 years of age at the University, entitling him to rights under the Age Discrimination in Employment Act ("ADEA").

95.     The University is required to abide by ADEA's prohibition on age discrimination.

96.     The University discriminated against Mr. Kuligowski on the basis of age by terminating him for cause in violation of its policies and then replacing him with a younger employee.

97.     The University demonstrated its intent to fire and replace Mr. Kuligowski by an employee of its preferred age by, among other things: (1) declaring that it wanted to hire more "representative" staff, implying that Mr. Kuligowski was

not "representative" as an alumnus and former student athlete at the University; (2) following up on its promise of hiring more "representative" employees by hiring younger replacements for jobs previously held by older employees; (3) replacing Mr. Kuligowski with a younger employee; and (4) willfully violating the University's own policies and federal law by failing to provide Mr. Kuligowski a hearing and by determining that his joke constituted "retaliation" when it clearly did not meet the definition of retaliation.

98.     Mr. Kuligowski is protected by ADEA from discrimination on the basis of his age.

99.     Mr. Kuligowski was qualified for his position at the University.

100.     Mr. Kuligowski suffered adverse employment actions, including but not limited to his firing.

101.     He was replaced by a younger employee.

102.     There is no legitimate nondiscriminatory reason for the University's behavior.

103.     Even if a legitimate nondiscriminatory reason exists, it is merely pretext for unlawful discrimination.

104.     Mr. Kuligowski has suffered severe professional, economic, and psychological harm as a result of this discriminatory process orchestrated against him.

## COUNT IV:

**Violation of the Due Process Clause of the Fourteenth Amendment
to the United States Constitution
(against Defendant Zivisky, in her official capacity as Executive Director of HR,
under 42 U.S.C. § 1983)**

105.   Mr. Kuligowski incorporates the above paragraphs by reference.

106.   The University is an Ohio government entity subject to the United States Constitution.

107.   The Fourteenth Amendment to the United States Constitution provides no state shall "deprive any person of life, liberty, or property, without due process of law."

108.   Fourteenth Amendment due process protections are required in higher education disciplinary proceedings.

109.   Mr. Kuligowski had a property interest in his continued employment with the University.

110.   Mr. Kuligowski had a liberty interest in his reputation, name, honor, and integrity.

111.   Defendants deprived Mr. Kuligowski of his property interest in continued employment by firing him for cause.

112.   Defendants deprived Mr. Kuligowski of his liberty interest by transmitting the false charges to the TOLEDO BLADE in connection with his termination.

113.   Defendants deprived Mr. Kuligowski of his due process rights, including the right to a live hearing with cross-examination.

16

114. Defendant Zivisky also oversaw these deprivations of due process and impliedly or expressly ratified them as the official responsible for HR adjudications at the University.

115. Defendant Zivisky had the authority to rectify the due process deficiencies in this case. She chose not to do so.

116. Defendant Zivisky, as an agent of the University and the State of Ohio, had no legitimate governmental interest that outweighed giving Mr. Kuligowski adequate procedural safeguards during the adjudication of the charges against him.

117. This finding severely limits—if not destroys—Mr. Kuligowski's future. He faces extreme difficulty securing other similar employment and has thus far failed to do so.

118. Mr. Kuligowski requests declaratory and injunctive relief against Defendant Zivisky in the form of (1) a permanent injunction prohibiting her or any agent of the University from making or maintaining any notation on Mr. Kuligowski's employment record relating to the investigation of the complainant's complaint at the University and from taking any further action depriving him of his constitutional right to due process; and (2) declaratory relief in the form of a declaration that the adjudication at issue in this case violated Mr. Kuligowski's right to due process.

### COUNT V:

**Violation of the Due Process Clause of the Fourteenth Amendment
to the United States Constitution
(against Defendant Zivisky, in her individual capacity,
under 42 U.S.C. § 1983)**

119. Mr. Kuligowski incorporates the above paragraphs by reference.

120.    The University is an Ohio government entity subject to the United States Constitution.

121.    The Fourteenth Amendment to the United States Constitution provides no state shall "deprive any person of life, liberty, or property, without due process of law."

122.    Fourteenth Amendment due process protections are required in higher education disciplinary proceedings.

123.    Mr. Kuligowski had a property interest in his continued employment with the University.

124.    Mr. Kuligowski had a liberty interest in his reputation, name, honor, and integrity.

125.    Defendants deprived Mr. Kuligowski of his property interest in continued employment by firing him for cause.

126.    Defendants deprived Mr. Kuligowski of his liberty interest by transmitting the false charges to the TOLEDO BLADE in connection with his termination.

127.    Defendants deprived Mr. Kuligowski of his due process rights, including the right to a live hearing with cross examination.

128.    These rights were clearly established at the time of Mr. Kuligowski's investigation and finding by Defendants.

18

129.    Defendant Zivisky also oversaw these deprivations of due process and impliedly or expressly ratified them as the official responsible for HR adjudications at the University.

130.    Defendant Zivisky had the authority to rectify the due process deficiencies in this case. She chose not to do so.

131.    Defendant Zivisky, as an agent of the University and the State of Ohio, had no legitimate governmental interest that outweighed giving Mr. Kuligowski adequate procedural safeguards during the adjudication of the charges against him.

132.    This finding severely limits—if not destroys—Mr. Kuligowski's future. He faces extreme difficulty securing other similar employment and has thus far failed to do so.

133.    Mr. Kuligowski requests compensatory and punitive damages.

## COUNT VI

**Violation of the Equal Protection Clause of the Fourteenth Amendment
to the United States Constitution
(against Defendant Zivisky, in her individual capacity,
under 42 U.S.C. § 1983)**

134.    Mr. Kuligowski incorporates the above paragraphs by reference.

135.    The University is an Ohio government entity subject to the United States Constitution.

136.    The Fourteenth Amendment to the United States Constitution states that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

137.   As described above, Defendant Zivisky, discriminated against Mr. Kuligowski on the basis of race.

138.   Mr. Kuligowski's protection against all forms of race discrimination by higher education institutions was clearly established at the time of his investigation and finding by Defendants.

139.   This discrimination serves no compelling governmental interest.

140.   If there is a compelling governmental interest served by race discrimination in higher education disciplinary processes or hiring processes, the means employed in this case are not narrowly tailored to the achievement of those objectives.

141.   Mr. Kuligowski requests compensatory and emotional damages including attorney's fees, punitive damages, and any other relief the Court deems just and proper, against Defendant Zivisky.

## <u>COUNT VII</u>

**Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
**(against Defendant Zivisky, in her official capacity as Executive Director of HR, under 42 U.S.C. § 1983)**

142.   Mr. Kuligowski incorporates the above paragraphs by reference.

143.   The University is an Ohio government entity subject to the United States Constitution.

144.   The Fourteenth Amendment to the United States Constitution states that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

145.    The University, acting through Defendant Zivisky, discriminated against Mr. Kuligowski on the basis of race.

146.    This discrimination serves no compelling governmental interest.

147.    If there is a compelling governmental interest served by race discrimination in higher education disciplinary processes or hiring processes, the means employed in this case are not narrowly tailored to the achievement of those objectives.

148.    Mr. Kuligowski requests declaratory and injunctive relief against Defendant Zivisky in the form of (1) a permanent injunction prohibiting her or any agent of the University from making or maintaining any notation on Mr. Kuligowski's employment record relating to the investigation of the complainant's complaint at the University and from taking any further action depriving him of his constitutional right to equal protection; and (2) declaratory relief in the form of a declaration that the adjudication at issue in this case violated Mr. Kuligowski's right to equal protection.

## JURY DEMAND

Mr. Kuligowski demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Kuligowski respectfully requests that this Court grant him the following relief against all Defendants:

1.  Damages in the amount to be proved at trial of no less than $10,000,000;

2.  Costs of suit;

3. Attorneys' fees, pursuant to 42 U.S.C § 1988(b);

4. Injunctive relief as delineated above; and

5. Such other and further relief as the Court deems necessary and proper.

Dated: April 5, 2024                                    Respectfully submitted,


                                                       */s/ Benjamin North*
                                                       Benjamin North
                                                       Lindsay R. McKasson *(pro hac vice*
                                                       *forthcoming)*
                                                       BINNALL LAW GROUP, PLLC
                                                       717 King Street, Suite 200
                                                       Alexandria, Virginia 22314
                                                       Tel: (703) 888-1943
                                                       Fax: (703) 888-1930
                                                       ben@binnall.com
                                                       lindsay@binnall.com

                                                       *Counsel for Plaintiff Craig Kuligowski*