IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CRAIG KULIGOWSKI,**	CASE NO. 3:24 CV 626

    Plaintiff,

    v.	JUDGE JAMES R. KNEPP II

**UNIVERSITY OF TOLEDO, et al.,**

    Defendants.	MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Craig Kuligowski brings this suit pursuant to 42 U.S.C. § 1983, Title VII, Title VI, and the Age Discrimination in Employment Act against the University of Toledo and Bethany Ziviski.[1] Against Ziviski, Plaintiff alleges procedural due process and equal protection violations related to the January 2023 termination of his employment as a football coach at the University. Jurisdiction is proper under 28 U.S.C. § 1331. Pending before the Court is Defendant Ziviski's Motion to Dismiss. (Doc. 8). Plaintiff opposed (Doc. 12), and Defendant replied (Doc. 16).

For the reasons set forth below, the Court grants in part and denies in part Defendant Ziviski's motion.

---

1. Plaintiff's Complaint spells Ziviski's last name "Zivisky." *See* Doc. 1. The Court uses the spelling Defendant's counsel provides: Ziviski.

## BACKGROUND

Plaintiff, a former University of Toledo football coach, alleges Defendants discriminated against him on the basis of his age and race when he was fired and replaced with a younger, black employee. *See* Doc. 1. Plaintiff is white and over the age of forty. *Id.* at ¶ 1.

Plaintiff asserts, in late summer 2022, the University of Toledo's Athletic Director, Bryan Blair, stated during a department-wide staff meeting his intention to hire more coaches who were "representative" of the current student-athletes, meaning younger and black. *Id.* at ¶¶ 25–30. He contends in fall 2022 the University "decided" he was not "representative" of the student-athletes because he was white and older. *Id.* at ¶ 33.

Also in fall 2022, Plaintiff asserts the University "seized on an opportunity when a false and frivolous report of sexual harassment was filed against" him, which an investigation did not corroborate. *Id.* at ¶¶ 34–40. He states the complainant approached him on December 16, 2022 and the two had a conversation, during which Plaintiff "joked with the complainant that 'if my wife knew you were near me, she'd kill you.'" *Id*. at ¶¶ 41–42. Plaintiff alleges "[o]bviously, this was not an actual threat, but a joke born of an uncomfortable situation." *Id.* at ¶ 42. The following day, "after baiting [Plaintiff] into talking to her[,]" the complainant filed a formal complaint against him on December 17, 2022, alleging retaliation. *Id.* at ¶ 43. Plaintiff contends a joke does not qualify as retaliation under the University's definition. *Id.* at ¶¶ 44–45.

That same day, December 17, 2022, the University suspended Plaintiff and sent him home from its upcoming postseason football game in Boca Raton, Florida. *Id.* at ¶ 46. Two days later, Plaintiff was interviewed by the University's Human Resources ("HR") Department, after

which two advocacy council members told him it was "nothing," and he was "definitely not getting fired or anything." *Id.* at ¶ 49.

On December 22, 2022, HR found Plaintiff responsible for retaliation "without a hearing." *Id.* at ¶ 50. On December 28, 2022, the Athletic Director called Plaintiff and told him he "would probably be fired or severely suspended[,] in clear contrast to what the advocacy council members had said." *Id.* at ¶ 51.

On January 14, 2023, the University, "through Defendant Zivisk[i], abruptly terminated [Plaintiff] for cause[.]" *Id.* at ¶ 52. Ziviski, who was at the time the Interim Senior Associate Vice President and Chief Human Resources Officer, signed Plaintiff's termination letter. *Id.* at ¶ 53. Plaintiff claims Ziviski "oversaw all terminations and hiring at the University and effectuated the University's practice of replacing older, white employees with younger, black employees." *Id.* at ¶ 54. Plaintiff asserts the University did not conduct a hearing prior to his firing, in violation of its own policies and outlined at 34 C.F.R. § 106.45 and in Title IX regulations. *Id.* at ¶ 56. "Within a few months[,]" the University replaced Plaintiff with a younger, black employee. *Id.* at ¶ 57.

Contract

Plaintiff's employment contract – attached to his Complaint – contains the following terms:

> 2.0 TERM
> 2.1 Length. This agreement is for two (2) years commencing January 24, 2020, subject to the conditions stated herein and terminating January 23, 2022.
>
> 2.2 No Tenure. This agreement does not grant Coach a claim to tenure in employment, nor do Coach's service pursuant to this agreement count in any way toward tenure at the University. This Agreement does not grant any expectancy of employment or reemployment except as expressly provided by the terms herein.

3

(Doc. 1-4, at 3). It further permitted the University to fire Plaintiff for cause or without cause. *Id.* at 7–15. However, if the University fired Plaintiff without cause, the contract provided for liquidated damages. *Id.* at 14–15.

Claims

Against Ziviski in her official capacity, Plaintiff brings two claims: a Fourteenth Amendment procedural due process claim and a Fourteenth Amendment equal protection claim. (Counts IV and VII). As to these claims, Plaintiff seeks: (1) a permanent injunction prohibiting Ziviski "or any agent of the University from making or maintaining any notation on [Plaintiff]'s employment record relating to the investigation of the complainant's complaint at the University and from taking any further action depriving him of his" constitutional rights to due process and equal protection; and (2) a declaration that the adjudication related to his termination violated his constitutional rights. (Doc. 1, at ¶¶ 118, 148).

Plaintiff also brings Fourteenth Amendment procedural due process and equal protection claims against Ziviski in her individual capacity. (Counts V and VI). On these claims, he seeks monetary damages. (Doc. 1, at ¶¶ 133, 141).

STANDARD OF REVIEW

Ziviski moves to dismiss Plaintiff's complaint in part based on lack of subject matter jurisdiction and in part based on failure to state a claim.

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests a complaint's legal sufficiency. Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to

4

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks, such as those raised by Ziviski here, challenge the sufficiency of the pleading itself. *Id.* In a facial attack, the Court must accept all material allegations of the complaint as true and must construe the facts in favor of the nonmoving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)); *see also Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001) (holding all reasonable inferences must be drawn in favor of the plaintiff when evaluating a facial attack on subject-matter jurisdiction).

## DISCUSSION

Ziviski presents six arguments in favor of dismissal. She contends: (1) Eleventh Amendment sovereign immunity bars Plaintiff's § 1983 claims for monetary damages against Ziviski in her official capacity; (2) Plaintiff is not entitled to the injunctive and declaratory relief he seeks; (3) Plaintiff's equal protection claims fail because a "class-of-one" claim does not apply in the context of public employment and Plaintiff has not adequately pled facts to support a racial discrimination claim; (4) Plaintiff fails to state a claim for a violation of the due process clause of the Fourteenth Amendment; (5) all of Plaintiff's § 1983 claims fail to allege personal

5

involvement by Ziviski in unconstitutional conduct; and (6) Ziviski is entitled to qualified immunity on Plaintiff's individual capacity claims.

For the reasons set forth below, the Court finds Plaintiff's due process claim must be dismissed, but his equal protection claim may proceed.

Official Capacity Claims

*Monetary Damages*

Ziviski first contends Eleventh Amendment Sovereign Immunity bars Plaintiff's § 1983 claims for monetary damages against her in her official capacity. (Doc. 8, at 6). But as Plaintiff points out (Doc. 12, at 14–15), and a review of the Complaint confirms, Plaintiff brings no such claims. Rather, the Complaint only brings claims for declaratory and injunctive relief against Ziviski in her official capacity, and claims for damages against Ziviski in her individual capacity. *See* Doc. 1, at ¶¶ 118, 133, 141, 148. Ziviski's motion to dismiss on this basis is denied as moot.

*Declaratory and Injunctive Relief*

Ziviski next contends because Plaintiff's official capacity claims are not adequately pled, he has not met his burden of showing entitlement to injunctive relief on Counts IV and VII. (Doc. 8, at 7–8). She contends: "Because his claims are not likely to be successful, Plaintiff cannot meet his burden of showing that he is entitled to injunctive relief[,]" citing caselaw regarding preliminary injunctions. (Doc. 8, at 7) (citing *Shepard & Assocs. v. Lokring Tech., LLC*, 2022 U.S. Dist. LEXIS 19219, at *48 (N.D. Ohio)). But this case does not involve a request for a preliminary injunction.

As Plaintiff points out in opposition, the *Ex parte Young* exception to sovereign immunity allows federal courts to award injunctive and declaratory relief against state officials when the relief is "designed to end a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64,

6

68 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908). "Put differently, *Ex parte Young* applies only when a plaintiff targets an ongoing violation of federal law and seeks prospective relief." *Mikel v. Quin*, 58 F.4th 252, 256–57 (6th Cir. 2023) (internal quotations omitted).

In his Complaint, Plaintiff specifically seeks "a permanent injunction prohibiting [Ziviski] or any agent of the University from making or maintaining any notation on [Plaintiff's] employment record relating to the investigation of the complainant's complaint at the University and from taking any further action depriving him of his constitutional right[s]" to equal protection and due process and "declaratory relief in the form of a declaration that the adjudication at issue in this case violated [Plaintiff]'s right[s] to" equal protection and due process. (Doc. 1, at ¶¶ 118, 148). In opposition to Ziviski's motion, Plaintiff cites *Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016). In *Doe*, students sued university administrators for allegedly mishandling sexual assault disciplinary proceedings. *Id.* at 443. They sought an injunction "prohibiting the imposing of, or reporting of, any disciplinary actions" under the student code of conduct. *Id.* at 444. The Sixth Circuit found such a request fit within the *Ex parte Young* exception, explaining:

> If successful, this claim would not require the court to grant any retroactive or compensatory remedy. Rather, the individual defendants would merely be compelled to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process. This is nothing more than prospective remedial action. *See Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995) (holding that an injunction requesting the removal of negative entries from a personnel record resulting from an alleged due-process violation was not barred by the Eleventh Amendment); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (finding negative entries in a student's university records stemming from an allegedly unconstitutional action presented a continuing violation sufficient to trigger the *Ex Parte Young* exception). Importantly, this relief imposes no monetary burden on the state itself, a factor often dispositive when examining the availability of injunctive relief under the Eleventh Amendment. *See Edelman*, 415 U.S. at 663–66, 94 S.Ct. 1347. Accordingly, the Eleventh Amendment does not bar the injunctive relief at issue here. *See Thomson*, 65 F.3d at 1321.

*Id.* The Sixth Circuit observed a request for a declaratory judgment that individual defendants violated the Constitution in the past would, "[s]tanding alone[,] . . . likely be barred given its retroactive nature[,]" but found it was "permitted when it is ancillary to a prospective injunction designed to remedy a continuing violation of federal law." *Id.*

Although Ziviski asserts Plaintiff's Complaint does not allege Ziviski or the University maintain a "negative employment record[,]", citing a newspaper article attached to the Complaint, that same article states Plaintiff's employment separation letter states he "'committed a significant and/or intentional violation' of [the University's] non-retaliation and standards of conduct policies." *See* Doc. 1-5. The Complaint, as set forth below, plausibly alleges these findings were pretext for discrimination. The Court therefore finds the Complaint sufficiently alleges – at the pleading stage – a claim for declaratory and injunctive relief under *Ex parte Young*. As elucidated further below, the Court finds Plaintiff plausibly pled an equal protection claim but not a due process claim. As such, Count IV (the declaratory judgment / injunctive relief claim related to the alleged due process violation) will be dismissed and Count VII (the declaratory judgment / injunctive relief claim related to the alleged equal protection violation) may proceed.

Individual Capacity Claims

   *Equal Protection*

Ziviski contends Plaintiff has not sufficiently alleged racially discriminatory intent to support an equal protection claim.[2] Specifically, she asserts Plaintiff fails to allege his termination was based on his race rather than on his violation of University policies and that he

---

2. Ziviski further argues Plaintiff has not adequately pled a "class-of-one" equal protection claim. (Doc. 8, at 9). Plaintiff's response suggests he does not intend to bring such a claim, but rather, brings a traditional equal protection race discrimination claim.

has not pled the requisite background circumstances for a "reverse race discrimination" claim. Independently, Ziviski also alleges the Complaint does not plead her personal involvement.

To state a claim under § 1983 based upon the Equal Protection Clause, a plaintiff must allege a state actor intentionally discriminated against him because of membership in a protected class or burdened a fundamental right. *Midkiff v. Adams Cnty. Reg. Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005). For cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). To do so, "a plaintiff must allege the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved[,] or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (internal quotation and citation omitted); *see also Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Section 1983 race discrimination claims can be proven by direct evidence or pursuant to the familiar *McDonnell Douglas* burden-shifting analysis applicable to Title VII discrimination claims. *See Weberg v. Franks*, 229 F.3d 514, 522–23 (6th Cir. 2000). Under this framework,

> a plaintiff must first set forth a prima facie case of discrimination. The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. The ultimate burden of persuasion remains at all times with the plaintiff.

9

*Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (internal citations omitted). Generally speaking, a plaintiff alleging employment discrimination must make a four-part showing in order to establish a *prima facie* case of discrimination: "(1) he is a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Id.* at 406. Further, in the Sixth Circuit, where, as here, a plaintiff alleges "reverse discrimination" – that is, he is a member of the majority claiming discrimination – he bears the burden of "demonstrating that he was intentionally discriminated against 'despite his majority status.'" *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C.Cir.1983)). The first prong of the *prima face* case in such instances is adapted to require the plaintiff to prove "background circumstances [to] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003) (internal quotations omitted).³

---

3. Plaintiff argues the Sixth Circuit's historical treatment of race discrimination claims from white employees – requiring the additional showing of background circumstances for "reverse race discrimination claims" – "is no longer good law[.]" (Doc. 12, at 18) (citing *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 206 (2023)). But, as recently as December 2023, the Sixth Circuit held the background circumstances element still applies. *See Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 825 (6th Cir. 2023) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)). District courts are bound by published opinions of the Sixth Circuit "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision." *United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023) (internal citations and quotation marks omitted). Even when intervening Supreme Court authority has modified an area of law in some respects, a district court must be "extremely careful" and should only depart from binding circuit precedent "where it is powerfully convinced that the circuit will overrule itself at the next available opportunity." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 832 (S.D. Ohio 2020) (internal citations and quotation marks omitted). Given that the Sixth Circuit has applied the background circumstances element of the test *after* the Supreme

10

This standard is an evidentiary one, however, and Plaintiff is not required to plead facts establishing a *prima facie* case in order to state a claim for relief. *See Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510–12 (2002)); *Swierkiewicz*, 534 U.S. at 510 (*McDonnell Douglas* "is an evidentiary standard, not a pleading requirement" and "the prima facie case relates to the employee's burden of presenting evidence"). Rather, at this stage, Plaintiff must plead sufficient facts to satisfy the plausibility standard. That is, he must allege sufficient "factual content" from which a Court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, that Ziviski discriminated against him based on his race.

The Court finds Plaintiff has plausibly alleged a § 1983 race discrimination claim against Ziviski here, including the element of personal involvement. The Complaint three individuals who were younger and black and who replaced older, white males (the new Athletic Director, new Assistant Athletic Director, and General Counsel). (Doc. 1, at ¶¶ 25–28). And it describes the Athletic Director's statement of intention to "hire more coaches who were 'representative' of the current student-athletes." *Id.* at ¶ 29. The Complaint then asserts Ziviski she "oversaw all terminations and hiring at the University and effectuated the University's practice of replacing older, white employees with younger, black employees." (Doc. 1, at ¶ 54). It further asserts she signed Plaintiff's termination letter "after a rapid and unfair 'investigation' into alleged retaliation". *Id.* at ¶ 52.

---

Court case Plaintiff cites, the Court is not so "powerfully convinced" and finds it remains bound by the Sixth Circuit's test at this juncture. Although the Supreme Court has granted certiorari on the issue, *see Ames v. Ohio Dep't of Youth Servs.*, No. 23-1039 (U.S. S. Ct. 2024), this Court remains bound by published Sixth Circuit caselaw. *See Howard v. Cherokee Health Sys.*, 2024 WL 4350330, at *5 (E.D. Tenn.) ("This precedent has been called into question, but the Court is 'bound to apply this rule here.'") (quoting *Ames*, 87 F.4th at 827 (Kethledge, J., concurring)).

Although more factual elucidation would perhaps be preferable, the standard is that the Complaint must state a *plausible* claim for relief. Plaintiff's claims may go forward even if "actual proof of [the] facts is improbable" or "a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. The Court finds the Complaint pleads enough facts suggesting Ziviski's awareness and ratification of a practice to discriminate against older, Caucasian employees (including Plaintiff); that is, there are enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of Plaintiff's claims. *Id*. It remains to be seen whether Plaintiff can back up these allegations with evidence sufficient to overcome summary judgment, much less prove them at trial. But he has alleged enough to overcome dismissal under Rule 12(b)(6). And if discovery does not reveal evidence of race discrimination or Ziviski's personal involvement, she can move for summary judgment on that basis.

*Due Process*

In his Complaint, Plaintiff asserts Ziviski violated his due process rights by depriving him of both a property interest and a liberty interest without due process. Specifically, he contends he had "a property interest in his continued employment with the University" and "a liberty interest in his reputation, name, honor, and integrity." (Doc. 1, at ¶¶ 109–10). Ziviski contends Plaintiff has not adequately alleged facts supporting either interest, and his due process claim must therefore be dismissed.

To state a procedural due process claim for relief under § 1983, a plaintiff must plead three elements: (1) he possessed a constitutionally protected interest, (2) he was deprived of that interest, and (3) the State did not afford him adequate procedural rights prior to depriving him of that interest. *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009). "First, the court must determine whether the interest at stake is a protected liberty or property right under the

12

Fourteenth Amendment. Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

Ziviski's motion only expressly challenges whether Plaintiff adequately alleges facts supporting a constitutionally-protected interest. *See* Doc. 8, at 10–13. Thus, although Plaintiff in opposition (and Ziviski in reply) present arguments regarding the other elements of a due process claim, the Court finds only the first element has been place at issue by Ziviski's motion and the Court thus focuses thereon.

### Liberty Interest

Ziviski contends Plaintiff cannot identify a liberty interest and that, even if he could, his failure to request a name-clearing hearing bars his constitutional claim based thereon. (Doc. 8, at 12–13). In response, Plaintiff "concedes dismissal without prejudice as to his due process claims only insofar as they derive from his liberty interest." (Doc. 12, at 23 n.3). He states he "has requested a name-clearing hearing and will seek leave to amend his Complaint to re-bring his liberty interest due process claim to the extent Defendants do not provide an adequate hearing." *Id.* In reply, Ziviski requests the Court dismiss the claim with prejudice. (Doc. 16, at 16–17).

Upon review, the Court finds dismissal without prejudice of this claim appropriate.

### Property Interest

Next, Ziviski contends Plaintiff has not adequately alleged a property interest upon which to base his due process claim. Ziviski asserts Complaint "does not contain factual content sufficient to establish that Plaintiff possessed an expectation of continued employment with [the University]." (Doc. 8, at 11). In opposition, Plaintiff states he "alleges a property interest deriving from his continued employment and contract." (Doc. 12, at 23).

13

The due process clause protects only those purported property interests "to which one has a legitimate claim of entitlement." *Waeschle v. Dragovic*, 576 F.3d 539, 545 (6th Cir. 2009) (internal quotation and citation omitted). These property interests are not creations of the Fourteenth Amendment but are rather created by independent sources, including state law. *Id.* Thus, to establish a property interest, a plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the state to rescind the benefit." *West v. Kentucky Horse Racing Comm'n*, 972 F.3d 881, 890 (6th Cir. 2020) (quoting *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir. 2002)) (alteration adopted).

"[G]overnment employees have a cognizable property interest in their job if they have tenure, are only removable for cause, or it can be legitimately implied that they have such status." *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 448 (6th Cir. 2022); *see also Gregory v. Hunt*, 24 F.3d 781, 785 (6th Cir. 1994) ("An at-will public employee does not have a property interest in continued employment unless it can be shown that the employee had a reasonable expectation that termination would be only for good cause.").

Where a "claimed property right derives from contract," that contract alone cannot serve as the source of a cognizable property interest because "the availability of a state breach-of-contract remedy defeats the due-process claim." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017); *accord Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273–74 (6th Cir. 1988) ("a nontenured employee[ ] . . . has a property interest in employment for the duration of the employment contract, but the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action"); *Ohio ex. re. Desmond v. City of Lundhurst*, 2005 U.S. Dist. LEXIS 57319, at *14 (N.D. Ohio) ("The Sixth Circuit made clear, therefore, that a promised term of employment does not in itself create a property interest *for purposes of*

14

*predeprivation or post-deprivation hearings* (*i.e.*, due process concerns), even though it may create an interest upon which to base an ordinary state-law breach of contract claim.") (emphasis in original) (citing *Ramsey*, 844 F.3d at 1274).

Citing paragraphs 23 to 25 of his Complaint, Plaintiff alleges he "was a term employee in the middle of his contract when he was terminated." (Doc. 12, at 23). These paragraphs provide:

> 23. The contract provides, in relevant part, that the University may terminate for cause only for "significant violation of University rules."
>
> 24. The University is incentivized to terminate for cause because if it terminates without cause, it owes [Plaintiff] a year's salary in liquidated damages.
>
> 25. In late Summer 2022, after approximately two years of employing [Plaintiff], the University conducted a department-wide staff meeting in which the new Athletic Director, Bryan Blair, introduced his new Assistant Athletic Director, Al Tomlison, who is under the age of 40 and black and replaced an older, white male.

(Doc. 1, at ¶¶ 23–25). As Ziviski points out in Reply, these paragraphs do not support Plaintiff's statement in his brief that he was a term employee in the middle of his contract.[4] Indeed, the contract states it is "for two (2) years commencing January 24, 2020, subject to the conditions stated herein and terminating January 23, 2022." (Doc. 1-4, at 3). Plaintiff further alleges in opposition that his "contracted term of employment . . . was renewed to encompass the date of his termination as implicitly conceded by Defendants" and that "Ziviski and the University demonstrated an intention to continually employ [Plaintiff] having already extended [Plaintiff's] employment after the first contract expired." (Doc. 12, at 23). Although a fair reading of the Complaint certainly encompasses the allegation that the University continued to employ Plaintiff beyond the term of his contract (and up to his termination in January 2023), the Court finds it

---

4. Moreover, Ziviski points out Plaintiff's Complaint only asserts a property interest "in his continued employment" (Doc. 1, at ¶ 109), and does not expressly cite the contract as the basis of his property interest. (Doc. 16, at 17).

15

contains no factual allegations to support that Plaintiff's contract itself "was renewed" or that any of its terms continued to apply.

In a footnote, Plaintiff requests, "[t]o the extent this Court finds [his] allegations of a continued contract to be insufficient, . . . leave to amend to more clearly articulate that his contract was renewed to continue through his termination date." (Doc. 12, at 23 n.4). Ziviski opposes, contending Plaintiff's "vague" and "cursory" request to amend is insufficient. (Doc. 16, at 21). The Court finds that even if the contract's terms applied, they do not create a property interest upon which Plaintiff can bring a § 1983 due process claim.[5] First, the contract itself expressly provides:

> 2.2 <u>No Tenure</u>. This agreement does not grant Coach a claim to tenure in employment, nor do Coach's services pursuant to this Agreement count in any way toward tenure at the University. This Agreement does not grant any expectancy of employment or reemployment except as provided by the terms herein.

(Doc. 1-4, at 2). Next, Plaintiff argues "he had both an express promise of liquidated damages absent termination for cause, and a 'clearly implied promise of continued employment,' given that his employment continued." (Doc. 12, at 23) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To the extent Plaintiff contends the liquidated damages provision of his contract supports a property interest, he has not cited caselaw in support. *Roth*, upon which Plaintiff relies, does not speak to such an argument, but rather holds that government employment alone – absent anything "secur[ing] [an] interest in re-employment or create[ing]

---

5. For this reason, the Court denies Plaintiff's cursory request to amend. *See Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) ("Plaintiffs are not entitled to a directive from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.") (citation and quotation marks omitted) (finding no abuse of discretion when the court denied the plaintiffs' motion to amend "because Plaintiffs' request was perfunctory and did not point to any additional factual allegations that would cure the complaint")

16

any legitimate claim to it" – does not create a property interest for due process purposes. *Roth*, 408 U.S. at 578.

And the contract itself did not create "a reasonable expectation that termination would be only for good cause" *Gregory*, 24 F.3d at 785, or "promise[] that he [would] only be terminated for good cause." *Chilingirian*, 882 F.2d at 203. Instead, it allowed for termination for cause *or* without cause and with payment of liquidated damages. *See Haywood v. Univ. of Pittsburgh*, 2012 WL 591746, at *4 (W.D. Pa.) ("Because the employment contract could be terminated without cause, plaintiff did not have a property interest arising from that contract and therefore he was not entitled to procedural due process under the Fourteenth Amendment. Plaintiff's harm as alleged arises from a breach of contract.") (finding no property interest established by a contract that allowed for "for cause" termination or liquidated damages for a termination without cause); *Parsai v. Univ. of Toledo*, 2024 WL 4349424, at *5 (N.D. Ohio) ("Because Parsai worked under a one-year employment contract that, on its face, does not grant him any right to tenure or to continuing employment after the elapse of the one-year period, his employment cannot serve as the basis for a protected property interest sufficient to trigger procedural due process protections.") (citing *Helm v. Eells*, 642 F. App'x 558, 556 (6th Cir. 2016) (holding a nontenured professor had no property right in continued employment absent a "clearly implied promise of continued employment")).

Nor does the Court find convincing Plaintiff's circular argument that he had "a 'clearly implied promise of continued employment,' given that his employment continued." (Doc. 12, at 23) (quoting *Roth*, 408 U.S. 577). Plaintiff's Complaint states no facts to support there was a promise of continued employment separate from the contract or to suggest he had an implied promise of continued employment. And the Sixth Circuit has held that even "[r]epeated contract

17

renewals do not, by themselves, create a reasonable expectation of permanent employment. *Edinger v. Bd. of Regents of Morehead State Univ.*, 906 F.2d 1136, 1141 (6th Cir. 1990) ("Indeed, if repeated renewals of a non-tenure contract were sufficient to create protected property interests, virtually any public employee whose non-tenure contract has been renewed successively could claim an entitlement to continued employment.").

As such, the Court finds Plaintiff's Complaint fails to allege facts plausibly supporting a property interest in his continued employment upon which to base a due process claim. As such, this aspect of Count IV is dismissed.

Qualified Immunity

Finally, Ziviski contends she is entitled to qualified immunity on Plaintiff's claims against her in her individual capacity. Her argument in this regard simply incorporates her other arguments and states that Plaintiff had not alleged facts to establish a violation of a clearly established constitutional right. *See* Doc. 8, at 15–16. She further reiterates the argument that Plaintiff fails to plead Ziviski's personal involvement.

The defense of qualified immunity shields government officials performing discretionary functions where their "conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994).

However, although "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to discovery," *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015), the Sixth Circuit has "cautioned that 'it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.'"

*Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). And it has recently repeated this sentiment. *See Saalim v. Walmart, Inc.*, 97 F.4th 995, 1003 (6th Cir. 2024); *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 661 (6th Cir. 2021).

Thus, "[a]lthough an [official's] entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley*, 779 F.3d at 433–34 (internal marks and citations omitted). The reason for this "general preference" is that: "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents [the court] from determining whether the facts of this case parallel a prior decision or not" for purposes of determining whether a right is clearly established. *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005)) (Sutton, J., concurring) (brackets omitted). Nonetheless, dismissal based on qualified immunity at the pleadings stage may be appropriate under some circumstances. *See, e.g.*, *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017).

As explained above, the Court finds Plaintiff has adequately alleged Ziviski's personal involvement in an alleged violation of the Equal Protection Clause at the pleading stage. And the Court finds on the facts of this case that qualified immunity is a question better addressed on summary judgment, after full development of the facts.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant Bethany Ziviski's Motion to Dismiss (Doc. 8) be, and the same hereby is, GRANTED IN PART and DENIED IN PART. Counts VI and VII may proceed.

Counts IV and V are dismissed with prejudice as to a due process claim based on a property interest and without prejudice as to a due process claim based on a liberty interest.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: November 26, 2024

20